# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 13-681V
(Not to be Published)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * <br> MICHELE LEMAIRE, <br>   <br>                 Petitioner, <br>   <br>                   v. <br>   <br> SECRETARY OF HEALTH AND <br> HUMAN SERVICES, <br>   <br>               Respondent. <br> * * * * * * * * * * * * * * * * * * * * * * * * | Special Master Corcoran <br><br> Filed: August 12, 2016 <br><br> Attorney's Fees and Costs; <br> Case Dismissed for Insufficient <br> Proof; Expert Costs. |

*Elaine W. Sharp*, Whitfield, Sharp & Sharp, Marblehead, MA, for Petitioner.

*Lara A. Englund*, U.S. Dep't of Justice, Washington, DC, for Respondent.

**DECISION GRANTING IN PART ATTORNEY'S FEES AND COSTS[1]**

On September 16, 2013, Michele Lemaire filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program"),[2] alleging that the tetanus ("DTaP"), trivalent influenza, and pneumococcal vaccinations that she received on September 16, 2010, caused her to suffer an anaphylactic reaction, which purportedly occurred within thirty minutes of administration of these vaccinations and the sequelae from which persisted for more than six months, along with acute complication of a pre-existing respiratory condition.

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decisions inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act.

After being represented by three successive attorneys, however, Ms. Lemaire ultimately determined that she lacked sufficient evidence to prove her claim, and I granted her motion to dismiss the matter by decision dated March 2, 2016. ECF No. 72.

Ms. Lemaire has now requested an award of attorney's fees and costs (reflecting work performed by two of the attorneys who represented her plus two experts), for a total sum of $30,017.55. Petition for Attorney's Fees & Costs, dated June 5, 2016 (ECF No. 75) ("Fees App."). Respondent does not oppose the request but suggests that the total sum requested is too high in light of fees awards from similar cases. For the reasons stated below, I grant in part Petitioner's request, awarding her **$21,452.55** in fees and costs.

**Procedural History and Fees Request**

As noted above, this action was initiated in September 2013. In the first several months of this case, Petitioner switched counsel twice. ECF Nos. 7 and 44. Ms. Lemaire was originally represented at the time of filing by David Marmelstein, but upon his death not long after filing, Pamela Cameron, Esq., appeared on Petitioner's behalf. *See* Motion for Leave to Appear, dated Oct. 21, 2014 (ECF No. 21). Ms. Cameron proceeded to represent Ms. Lemaire for the next four months, and in that time filed numerous medical records on Petitioner's behalf. See ECF Nos. 21-35. Ms. Lemaire filed 14 exhibits, totaling 232 pages, plus two fact affidavits. *Id.*

By mid-February 2014, Ms. Cameron moved to withdraw from the matter. *See* Motion, dated Feb. 19, 2014 (ECF No. 37). After present counsel, Ms. Elaine Sharp, appeared in April 2014, Respondent filed her Rule 4(c) Report disputing that compensation was appropriate in this case. ECF No. 46. Respondent specifically maintained that Ms. Lemaire could not establish that she had experienced symptoms necessary to meet the criteria for a Table Injury (which lists "anaphylaxis or anaphylactic shock" as a presumptive injury for the tetanus and pertussis components of the DTaP vaccine where such injury occurs within four hours of the administration of the vaccine), and that Petitioner had not submitted an expert report or other persuasive evidence in support of her claim that one of the vaccines she received caused her symptoms. *Id*. Moreover, Respondent noted that Petitioner had not provided evidence that she suffered residual effects of anaphylaxis for more than six months after the administration of the vaccine, as required by the Act. *Id*.

The parties participated in a status conference held on June 23, 2014. At that time, Petitioner's counsel (who had now represented Petitioner for six weeks) expressed the desire to review the medical record, in an effort to acquaint herself with the relevant facts and assess the viability of the case. I agreed to allow her time to do so, ordering Petitioner to file a status report by the end of August 2014 that would propose how to move forward, including whether Petitioner

would be filing an expert report. Order, dated June 23, 2014 (ECF No. 49). I reasonably expected that the time I allotted for this process would in fact be used by counsel.

As ordered, Petitioner filed a status report at the end of August. ECF No. 50. In it, counsel represented that she had retained a "reviewing physician" to review the filed medical records, and stated that this individual would require five months, or until January 30, 2015, to accomplish this task (in addition to the nine-plus weeks I had already provided counsel to get up to speed on the matter). *Id.* at 1. In response, I set an initial deadline for Petitioner to file an expert report in this matter of January 30, 2015. ECF No. 51.

Petitioner subsequently requested (and was granted) *multiple* extensions of time to file that expert report. *See, e.g.*, ECF Nos. 54, 55, 57, 59, 61, 65, and 66. Finally, a year after I first set the deadline, Petitioner filed an expert report on November 30, 2015[3] – but Petitioner's expert, Dr. David Axelrod, agreed with Respondent, indicating that he was "unable to find evidence that Michelle LeMaire [sic] suffered immune damage, as a result of her September 16, 2010 vaccinations." ECF No. 67-1 at 2. Accordingly, during a status conference on December 18, 2015, Respondent expressed the intent to file a motion for a ruling on the record in this case, and I set a deadline for her to do so. ECF No. 68.

On January 26, 2016, Respondent filed a motion for judgment on the administrative record. ECF No. 69. In it, Respondent indicated that because Petitioner had not met her burden of proving that the September 16, 2010, vaccinations caused her purported vaccine injury, her claim should be dismissed. *Id*. In response, on February 29, 2016, Petitioner filed a concurrent motion for a decision dismissing her petition, stating that "[a]n investigation of the facts and science supporting Petitioner's case has demonstrated to her that she will be unable to prove that she is entitled to compensation in the Vaccine Program." ECF No. 70. I granted the motion as noted above.

Ms. Lemaire filed the present fees petition in June of this year, seeking in total $29,834.00 in fees and costs. *See generally* Fees App. She specifically requests an award of $13,838.00 in fees reflecting the work performed on the case by Ms. Sharp, billing for work performed in 2014 and 2015 at $380.00 per hour, plus all time in 2016 at $390.00 per hour. Ex. 17 to Fees App. She also asks for reimbursement of $2,608.55 in other costs, which include obtaining medical records plus the $2,500.00 retainer paid to Dr. Axelrod. Ex. 21 to Fees App. And she asks for $9,500.00 for work performed by the medical records reviewer, Dr. Leonard Worden, in 2014 through 2015. Ex. 23 to Fees App.

---

[3] On April 30, 2015, Petitioner filed what was purported to be an "expert report" from Dr. Leonard Worden. ECF No. 56. However, the filed document was merely a five-page summary of certain medical records, along with some conclusory statements that the facts fit the clinical definition of anaphylaxis. *Id.* After a subsequent status report, I issued an order noting that (as Petitioner's counsel had acknowledged) Dr. Worden's work on the matter was primarily intended to determine whether the underlying claim had a reasonable basis, and did not otherwise constitute a true causation opinion. *See* Order, dated May 6, 2015 (ECF No. 57).

In addition, the fees petition also requests that one of Petitioner's prior lawyers, Pamela Cameron, receive $3,996.00 in fees for work performed from October 2013 until February 2014. Ex. 22 to Fees App. Nothing has been offered by Petitioner to explain the two-page invoice associated with time billed to the matter by Ms. Cameron, but it appears she billed her work at a rate of $200.00 per hour (a total of 11 hours, or $2,200.00), and also employed a paralegal, Caroline McCarthy, who performed 23.95 hours of work at a rate of $75.00 per hour ($1,796.00). *Id.*

On June 15, 2016, Respondent filed a document reacting to Petitioner's Motion. ECF No. 77. Respondent asserts that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for Respondent in the resolution of a request by a Petitioner for an award of attorney's fees and costs." *Id*. at 1. Respondent added that she "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." *Id*. at 2. However, she maintained that a reasonable amount for fees and costs in the present case would fall between $18,000.00 and $27,000.00, providing no substantiation for this proposed range. *Id*. at 3.

Petitioner filed a reply on July 24, 2016. ECF No. 79 ("Reply"). She stressed the reasonableness of the work performed, and noted as well that Respondent had not offered any specific objections to the request. The matter is now ripe for resolution.

**ANALYSIS**

**I.     Relevant Law Governing Fees Awards**

Vaccine Program petitioners who receive compensation for their injuries are by statute entitled to an award of "reasonable" attorney's fees and costs. Section 15(e)(1). It is for the special master to evaluate and decide whether the fees sought are in fact reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special masters may, in the exercise of their discretion, reduce hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

Even unsuccessful petitioners, however, may be awarded reasonable fees and costs if, in the special master's exercise of discretion, such an award is appropriate (and, as in the case of successful claims, if the requested fees and costs are "reasonable"). The primary factors to be considered under such circumstances are whether (a) the petition was brought in good faith; and (b) there was a reasonable basis for the claim for which the petition was brought. Section 15(e)(1); *Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012).

4

Determining whether a petition was filed in good faith is a subjective inquiry, and can be established as long as the petitioner demonstrates an honest belief that she has suffered a compensable vaccine injury. *See Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993); *see also Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (petitioner is entitled to presumption of good faith). This element is therefore the more easily established of the two. *Austin v. Sec'y of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, at *7 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("[d]ue to its subjective nature, the standard for good faith is very low"). Respondent has not questioned Petitioner's good faith in filing the case, and I do not find any grounds in the record to conclude the case was not so filed.

Determining a claim's reasonable basis involves application of objective criteria. *See McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303-04 (2011) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375 (Fed. Cir. 1994)) ("[t]he petitioner must affirmatively establish a reasonable basis to recover attorneys' fees and costs."). An assessment of reasonable basis "look[s] not at the likelihood of success but more to the feasibility of the claim." *Di Roma*, 1993 WL 496981, at *1. Here, Respondent does not challenge the claim's reasonable basis, and I have not independently determined that the case lacked it up to the time the motion to dismiss was filed.

**II.     Challenges to the Amounts Requested for Petitioner's Attorneys**

   A.     *General Legal Principles*

Determining the appropriate amount of an award of reasonable attorney's fees is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health and Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. den'd*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, DC for Vaccine Program cases). *Avera*, 515

F.3d at 1348. After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at 205-06. This reasonableness inquiry involves consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.[4]

After an hourly rate is determined, I must also evaluate if the fee applicant has established the reasonableness of the work performed. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.").[5] The special master is not obligated to evaluate an attorney's billing records on a line-by-line basis in deciding a fee petition. *Saxton*, 3 F.3d at 1521-22 (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen*, 102 Fed. Cl. 719 at 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only fifty-eight per cent of the numbers of hours for which compensation was sought). At bottom, as the Supreme Court instructs, when awarding attorney's fees, special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

B.     *Ms. Sharp's Fees*

As stated above, Ms. Sharp worked on the matter for a little less than two years. She performed a total of 36.05 hours of work on the matter, billed at the rate of $380.00 per hour for work performed before 2015 (approximately 27 hours), and then $390.00 for work performed in 2016 (approximately 9 hours of work). She also billed one hour of time in total at a paralegal rate of $130.00 per hour for tasks she deemed appropriate to a paralegal. *See generally* Ex. 17. I calculate the total sum requested to be $13,913.00 (slightly higher than what Petitioner requests).

Ms. Sharp practices law in a community adjacent to the Boston, Massachusetts metropolitan area, and has considerable Vaccine Program experience. *See* Ex. 18 to Fees App. Other special masters have awarded Ms. Sharp fees (calculated at a forum rate) comparable to what is requested herein. *See, e.g.*, *Yang v. Sec'y of Health & Human Servs.*, No. 10-33V, 2013 WL 4875120, at *3-4 (Fed. Cl. Spec. Mstr. Aug. 22, 2013) (compensating Ms. Sharp at forum

---

[4] In some cases, determining the proper hourly rate for a particular attorney requires consideration of whether there is a significant disparity between the forum rate applicable to the Vaccine Program generally and the geographic forum in which the attorney practices, in order to adjust the rate is used for the lodestar calculation. *Avera*, 515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). The *Davis* exception is not relevant to this matter, however.

[5] Although *Mares* did not interpret the Vaccine Act's fees provisions, fee-shifting statutes are interpreted similarly. *Avera*, 515 F.3d at 1348.

rates, and awarding her $370.00 per hour for work performed in 2013). I find such prior decisions to be well-reasoned and applicable herein. Because the rates requested appear comparable to what has been previously awarded Ms. Sharp, I accept her requested rates for work performed from 2014 to the end of 2015 as reasonable, and also her heightened rate for 2016 work.

I also find that the total time billed to the matter was reasonable. Although there was significant and unacceptable delay in obtaining an expert report in this case, and although some of the time associated with expert work on this matter is (for the reasons discussed below) being reduced, I do not find from my review of Ms. Sharp's invoices that any particular instance of work performed was inflated or sufficiently objectionable to require adjustment. I therefore award her all fees requested in this matter.

### C. *Ms. Cameron's Fees*

Ms. Cameron, an attorney practicing law in Middlebury, Connecticut, seeks to be paid at a rate of $200 per hour for eleven hours of work in total. Ex. 22. Although Petitioner has not affirmatively established the basis for this rate, I find (in the exercise of my discretion, and based on my experience awarding fees in Vaccine Program cases) that her requested rate is eminently reasonable. The work she performed (which largely consisted of obtaining and filing medical records) was also reasonable. I will therefore award the entirety of these fees as requested.

## III. Costs

There are three categories of costs requested herein: paralegal costs, litigation-related costs, and expert costs.

First, Petitioner asks for an award of $1,796.00 in paralegal costs incurred by Ms. Cameron's paralegal, Caroline McCarthy, based on the rate of $75.00 per hour. *See* Ex. 22. Respondent makes no objection to the proposed paralegal rates, and I find them to be reasonable, as well as the total hours billed. I will therefore award the requested paralegal rates and hours herein.

Second, Ms. Sharp incurred $108.55 in litigation costs not related to an expert. *See* Ex. 21. These costs as well are not formally opposed, and I discern no independent reason not to award them in full.

Third are the expert costs incurred in representing Ms. Lemaire. One component of such costs is more easily awarded than the other. The causation expert report filed in this action was from Dr. Axelrod. Petitioner requests $2,500.00 for his retainer and work performed, but provides no invoice breaking down his hourly rate or specific tasks. I have previously awarded costs for

7

work performed by Dr. Axelrod in a case that was ultimately dismissed, but where it appeared that his expert guidance factored into the case's resolution. *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *15-17. (Fed. Cl. Spec. Mstr. Nov. 10, 2015). There, he requested compensation calculated at a rate of $500.00 per hour, for five hours of work, but I reduced his rate to $450.00, and also eliminated one hour of time (in part to account for records review time that appeared to have been unnecessarily incurred). *Gonzalez*, 2015 WL 10435023, at *15.

I will apply the *Gonzalez* template herein with respect to hourly rate, as it appears likely that Dr. Axelrod here similarly billed at the same rate and for the same amount of work, five hours (given that Petitioner requests the same sum herein). I will only reduce .5 hours of time to account for duplication with Petitioner's records reviewer, however, and therefore award 4.5 hours of time for Dr. Axelrod's work, or a total (based on the $450.00 hourly rate) of **$2,025.00.**

Dr. Worden's requested costs, however, are problematic. I find nothing objectionable about his requested hourly rate of $200.00 per hour. Ex. 23 at 2. I am also prepared to award Petitioner some costs incurred by Dr. Worden's record review, as a consulting expert, consistent with awards received for his services in other cases. *See, e.g., Yang*, 2013 WL 4875120, at *10 (paying Dr. Worden $2,550.00); *Estate of Oswalt v. Sec'y of Dep't of Health & Human Servs.*, No. 03-2153V, 2011 WL 2149932, at *14 (Fed. Cl. Spec. Mstr. May 2, 2011) (paying Dr. Worden $1,250.00). But the total amount requested here is grossly excessive.

I did not formally sanction the use of Dr. Worden in advance. Instead, Ms. Sharp appears to have determined on her own that she required his assistance. *See* Reply at 4. But Petitioner has not demonstrated that the complexity of this case merited a separate expert to review records, in lieu of a causation expert, especially given that there were less than 250 pages of medical records filed (with zero additional records filed after Ms. Sharp's appearance). It is facially unreasonable for Petitioner to posit that a consulting expert required nearly 50 hours of time to review the medical records under the circumstances.

Moreover, much of the case's delay is attributable to Dr. Worden, and/or counsel's lack of management of his work. As Ms. Sharp's and Dr. Worden's invoices reveal, Ms. Sharp did not contact Dr. Worden until August 29, 2014 – the very deadline I had set for her status report in June, thereby wasting the time I had initially provided Petitioner to complete that review. Ex. 17 at 9. Thereafter (and during the entirety of the five-month period I had allotted for completion of the records review process), Dr. Worden performed only a quarter hour of work on the matter (Ex. 23). The entire document review process for which Dr. Worden was retained did not even begin until Petitioner had missed the January 30th deadline to complete the process, and Petitioner has provided no acceptable explanation justifying the delay. *See* Motion for an Extension of Time

Based Upon Circumstances Constituting Excusable Neglect, dated Feb. 17, 2015 (ECF No. 54) at 2 ¶ 6 (identifying an unspecified "confluence of circumstances" as the reason for delay).

Despite my dismay at Ms. Sharp's failure to exercise reasonable control over this records review process, I have not cut back any of Ms. Sharp's time, since it was not facially excessive in any particular respect. But it is not appropriate to award Dr. Worden nearly as much as Ms. Sharp is receiving under the circumstances. Petitioners do not have a blank check to run up costs in Program cases, no matter how reasonable they unilaterally believe them to be. *Perreira*, 27 Fed. Cl. at 34. Here, it is readily evident that Dr. Worden's costs were not reasonably incurred. As a result (and in keeping with the Supreme Court's admonition to achieve "rough justice" in awarding fees), I will allow only $1,500.00 of compensation for Dr. Worden's time, based on 7.5 hours of review time.

## CONCLUSION

Based on all of the above, the following chart sets forth the total calculation of Petitioner's interim fees award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Ms. Sharp's Fees | $13,913.00 | None | $13,913.00 |
| Ms. Cameron's Fees | $2,200.00 | None | $2,200.00 |
| Paralegal Costs | $1,796.00 | None | $1,796.00 |
| Dr. Axelrod's Fees | $2,500.00 | $475.00 | $2,025.00 |
| Dr. Worden's Fees | $9,500.00 | $8,000.00 | $1,500.00 |
| Litigation Costs | $108.55 | None | $108.55 |

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of attorney's fees and costs awards, and based on the foregoing, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs, awarding **$21,542.55** in fees and costs. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[6]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.